Mr. Maxwell, will you come speak with us? May it please the court, my name is Ronald Maxwell. I represent the appellate in this case who is Shaquanna Brookins. I've raised two issues in this appeal. The first deals with the reasonableness of the sentence imposed by the district court, which includes the issue of failing to provide set forth sufficient justification for warrant, which warrants a sentence outside the high end of the guidelines, and also failing to properly weigh all of the 3553 factors in arriving at a reasonable sentence. We also raised a second issue involving restitution in this case. In this instance, we contend there was not sufficient evidence to justify or determine the actual loss of the victim under Section 3663. It seems that issue to me is waived by the agreement, by the plea agreement. Well, as to the restitution, we did agree as a part of the plea agreement to pay restitution to JV, if any, under Section 3663. Yeah, and the defendant expressly waives the right to appeal the defendant's sentence on any ground except the ground that the sentence exceeds the defendant's applicable guidelines range. That strikes me as a waiver of anything with respect to restitution. We've addressed this in the briefs, Judge, and I know under Section 3663, it says the court may impose restitution as a part of the sentence. I suggest that the restitution is in fact a part of the sentence. Right, and the defendant waived anything with respect to the sentence except that the sentence exceeds the applicable guidelines range. You've got that. The first issue you identified, this was an upward variance. You're complaining about that. That was not waived, it seems to me, by the agreement. But the restitution issue is waived because the only thing that you have agreed not to waive is a sentence above the range. We waived our right to appeal under certain circumstances, not just appeal the sentence, I understand. We are right to waive the appeal under certain circumstances, one of which was met here, and that is that the sentence was outside the guidelines. I understand that. You get to raise that argument and make that argument. You said that's the first issue that you've raised. What I'm saying is that you've waived, though, the restitution issue because you haven't reserved the right to raise that issue. That's true. We didn't reserve that right. Of course, we were not also advised that the plea colloquy would be waiving a right to . . . Here's the agreement. I'm reading from the agreement. The defendant expressly waives the right to appeal the defendant's sentence on any ground except the ground that the sentence exceeds the applicable guideline range. That means you can't appeal the sentence on any other ground, doesn't it? Correct. Including restitution, which is part of the sentence, right? Yes. I believe restitution is a part of the sentence. You can't appeal that. You've waived it. You've expressly waived it, your client. Judge, if that is the court's ruling, then so be it. I won't stand here and argue. My position has been that restitution would be a part of the sentence and that we waived the right to appeal except for when the sentence may be over the guidelines. I just am taking the position that sentence and restitution are one and the same. If the court's ruling is that I'm not right there and the election secretary's ruling are contrary to that, I didn't think they were, then I'll accept that. Do you have any case that supports that position? Other than what I've cited in my brief, I believe there are two cases I set forth there. The Johnson case. Doesn't that forecloses your argument? I'm not sure that does. I can't really address that. In the Johnson case, Mr. Maxwell, the appeal waiver made express reference to the restitution. That wasn't the case here, right? No. Restitution was never discussed in the plea codify. He was never advised that he might be waiving his right to restitution. But the plea agreement says what I've read, right? You don't quarrel with my reading of the agreement. We waived our right to appeal our sentence. The defendant expressly waives the right to appeal the sentence on any ground, any ground except the ground that it exceeds the applicable guidelines range. You can make an argument about it exceeded the range. You can't make an argument about any other ground. That's the way I read that. I don't agree with that, but if that's the ruling of the court, I'll abide by it. I still think that restitution is a part of the sentence and that we have a right to appeal the sentence, we can repeal the restitution. If I'm incorrect, then- That's a different ground. That's appealing on a different ground, isn't it? I view it as appealing the sentence. I agree with that. Final judgment includes the restitution provision in the final judgment. Let me just make sure I understand your argument. If restitution is part of the sentence and he can only appeal the sentence on the grounds that it's outside the guidelines range, then what is your argument on restitution? How is that outside the guidelines range? It wasn't, but it was a part of the sentence. If we're able to appeal the sentence, we should be able to appeal the restitution portion as well. That's my position. But then going to the reasons of the sentencing case, as the court knows, the guidelines in this case were pretty significant. They provided for an imprisonment guideline range of 292 to 365 months. Probation found no basis for variance from that sentence. The United States Attorney's Office recommended a midline, midrange sentence, which they say properly reflected the conduct of the defendant. After review, the court did impose a sentence of 420 months, which was a 55-month variance. We do contend that under the circumstances of this case, that sentence imposed was unreasonable. Now, I say that because in two parts. One, the court seemingly relied upon but a portion of the evidence, and that is the violence involved in the case, the beating of DC, the selling of women for profit, things of this nature, which were described as being horrific. I'm not saying there were not bad facts in this case, but I am suggesting that conduct of this nature is found in most sex trafficking cases. We have violence, sex, and force, and prostitution, and I suggest that this case is more of a run-of-the-mill case and within the heartline of cases. The guidelines do readily provide for that type of conduct. Now, once we go over outside the guidelines, the court is required to set forth sufficient justifiable reasons why the guidelines are not sufficient. And in this case, I don't believe that's been done. I don't believe that the court has described why this case is any different from a typical sex trafficking case and why the guidelines are not adequate, which the court is required to do. Here, it just simply says there was violence. Well, violence is in all sex trafficking cases. But further, we also contend that in weighing the 3553A factors in this case, that the court focused on only a portion of the factors involved, not all of them. And for instance, I would like to point out that, yes, there was violence in this case, but at the same time, this case is distinguished somewhat because D.C. was never kidnapped or forced or locked in a room or kept against her means in that regard. She was actually working as a prostitute on the streets of Jacksonville. She was a drug addict. She had a pimp. My client was working on the streets of Jacksonville selling drugs and she was also a drug addict. D.C. actually approached her. I believe that your client acknowledged in her plea, right, that she had routinely beaten D.C. and prevented her from escaping, that she smashed D.C.'s head into concrete steps after an escape attempt, that she took advantage of her drug addictions to maintain control of her. Isn't that true? Substantially. It is. These parties . . . And the district court said that there was a pretty serious and lengthy criminal history here, right, that reflected a serious disrespect for the law and for the safety of others. Acknowledged your client's mitigation arguments regarding a difficult childhood, but said, look, the guidelines were inadequate to reflect the seriousness of the offense. They're inadequate to protect the public. They're inadequate to accomplish deterrence for Ms. Brookins and they're inadequate to accomplish just punishment. That's sufficient, isn't it? If that's the case, then most any sex trafficking case would be outside the guidelines, I believe. It doesn't seem to . . . I understand the courts have to weigh equally or somewhat, weigh at least the 35-53 factors here. In this case, the fact that these parties met, not by force. They lived together. They had a romantic relationship. Yes, D.C. paid her money to Brookins. Brookins paid all the expenses. And this went on for a period of nine months. And we have one reported occasion where that incident you mentioned happened. D.C. had left and she took with her supposedly drugs or money at Brookins. And Brookins and her friends went looking for her and found where she was at a restaurant. And they went and got her. And there was an altercation, yes. And they put her in a car and took her back to her place. That's not nice. That's nasty. But in a period of nine months, that's the one reported occasion. Yes, there were witnesses who said that she had black eyes when they saw her from time to time and things of this nature. But also, we had witnesses who were saying they saw them together at their house and there seemed to be a reasonable relationship. They played with the kids and all that. Also, one occasion in May of 2015 when D.C. was arrested and then got released, she went to her mother's house. But later on, she calls up Brookins and says, kind of get back with you. These are factors which I think tend to take this out of the typical sex trafficking case. And the factors which weren't weighed properly. And although I'm not saying there wasn't violence in this case, and I abhor the violence, but that is found in most sex trafficking cases. And I think you need to balance all these issues. And I just suggest that in this instance, the court did not do that and . . . You did not do it or did not do it in a manner in which you think was appropriate. It apparently did do it, but you disagree with the manner in which the balancing took place. You want some factors to be given greater weight than others. And this is a plain error case. So where do you point to that would have made the district court aware that the balancing that the court was using was not a proper balance? Well, obviously, this was the formidable argument that we had during the sentencing hearing and also during the restitution hearings in trying to bring all these factors out. Yet, frankly, I think based on the transcript, the only thing that was mentioned was the violence, which the court read a minute ago. That was it. But what about the other nine months? I just think that the court didn't weigh all of this equally in imposing a sentence over the guidelines. Thank you, Judge. Ms. Karinas. Good morning. May it please the court. Jennifer Karinas for the United States. Let me start with the reasonableness of this sentence. As Judge Rebrano pointed out, as far as the argument that the court did not adequately explain the variance, that's a procedural challenge that Brookings did not make. So it is reviewed for plain error in the record as the court has cited instances where the court did indeed make extensive findings. It's not the case that the court was focused solely on the violence here. The court was focused on the violence. It was not one occasion in nine months. There is no objection to the testimony by, for example, DC's mother who said every time she saw her daughter, she had black eyes. She had a broken lip. She begged Brookings to stop beating her. And the story of DC trying to escape, calling her mother from the bathroom of a hotel, begging her to pick her up, trying to get in the car. And Brookings pulling her out and smashing her head against the concrete. This was not an isolated incident in a nine-month happy relationship. This is an ongoing pattern by Brookings to control DC, to force her to traffic herself, to prostitute herself, and to take all of her money and to exploit her addiction. That's what this case is about. And I would submit that this romantic relationship that she had with DC, that makes it worse. That's a betrayal. They had a relationship. She's supposed to care about her and she's beating her constantly to prevent her from escaping and to force her to traffic herself. Now, as far as the lack of factors such as kidnapping or being bound or things of that nature, those are not part of this case. Those are not elements of a sex trafficking case. Brookings admitted she pled guilty to trafficking DC. She pled guilty to forcing her to traffic herself and give all of her money to her. And she admitted, the PSR facts, that she did the same with JV. Now, she had that count dropped as part of her plea agreement, but she nevertheless admitted to conduct that otherwise would amount to sex trafficking as to JV. And so the court made it very clear that its upward variance, which is a modest 15% above the upper end of the guidelines range, was to reflect not just the violence in this case, but the pattern of violence and the pattern of defying the law, the pattern of not showing up for a court hearing when she was supposed to be sentenced and then being picked up on another gun charge. And none of those things that were discussed at the sentencing hearing, Brookings didn't object to any of those. Now, when she took the stand, she did try to justify her violence. And that was another thing the court pointed out, is the lack of remorse in her attempt to justify her violence. And moving on to the restitution issue, Judge Pryor would agree that that issue is waived here based on this court's decision in Johnson. And Miller is an unpublished case. We cited in our brief, but it really amplifies Johnson, that in a case like this, where you have a restitution order based on an agreement to pay restitution, you can't challenge that at all. And in Miller, for example, they tried to challenge whether or not someone was a victim, because in that plea agreement, they didn't even list the names of the victims. There's a question about waiving the restitution. And maybe it's a practice point more than anything else. Should the agreement point out some ceiling or some guidance as to what that restitution may be? The defendant seems to be given a blank check, so to speak. So is that a problem? Are you really waiving maybe the challenge to pay in restitution, but not to the amount of restitution? What do you think of that? Your Honor, in this case in particular, because Brookins was made very aware at the change of plea hearing, you do understand that you're agreeing to pay restitution as part of this plea agreement. And you do understand that we don't even know what that amount is yet. Yes, I agree to that. And then 3663 has its own built-in limitation. You have to show actual losses. And the government here showed actual losses, the amount of money Brookins took from JV by force, by threat of violence, and gave her what we would say is really an undeserved benefit of an additional 15% reduction to reflect expenses she claims to have made, but put on no evidence, which was her burden. Did it reflect the ability to pay? The judge, all the judge is required to do is consider it. The judge did. The judge set up a payment plan for while Brookins is in prison and then said it would be revisited if needed when she's released. So the judge did exactly what they're required to do and considered it. Was there any aspect of the plea agreement or colloquy that explicitly put Brookins on notice that she was waiving her appeal of the restitution order? Your Honor, I would say it's included in what the language that Judge Pryor cited of on any ground. That was very clear, and that includes restitution. That's not a new concept. So no, the court never said you do... Well, let me ask you a question about that. So in the Johnson case, as I mentioned earlier, there was an explicit reference in the appeal waiver to the restitution amount because it said it referenced the sentencing court's finding in the event the loss amount is determined to exceed $30,000. So like what Judge Robreno was talking about, there was a limit, but there was a reference that would have told the defendant that the restitution order is part of this appeal waiver. Was there anything like that in this case? There wasn't, and I just want to point out one distinction with Johnson. And in Johnson, the provision that you're citing, that's about the amount of loss for the purpose of the sentencing guidelines. So that's a little bit different here. And courts have said restitution and calculation of the amount of loss, because it made the intended loss, are two different things. So it's Johnson, I wouldn't even say that there's really a difference there because all they're saying is, as part of your sentence, if the calculation of the amount of loss is more than $30,000, you can appeal. Well, that's not what Johnson says. In Johnson, the court said it was undisputed that Johnson, quote, explicitly waived an appeal as to restitution, as long as the amount did not exceed $30,000. So there's a reference to restitution there. Excuse me, Your Honor. Well, either way, I would say that Johnson, including that language, doesn't mean that that has to be in there. And in fact, because it's been well known that restitution is part of a sentence, that that language doesn't need to be in there so long as Brookings is told, on any ground, you can't appeal your sentence. Because otherwise, the court would be required to go through every hypothetical ground that one could appeal a sentence on in order to make sure someone adequately and knowingly had waived their right to appeal their sentence. Another interesting thing I noticed about Johnson is that the quote that a waiver of the right to appeal a sentence necessarily includes restitution, is in Johnson, they were actually quoting the government's argument. It says the government argues that because restitution is part of a criminal defendant's waiver, a waiver of the right to appeal a sentence necessarily includes. Are there any cases besides Johnson that make that holding? Your Honor, I found, I don't think I have a published case. I have the Miller case that refers to Johnson and refers to that as the holding. Miller seems to consider that to be part of the holding of Johnson. If I could try to find the language here. Miller's an unpublished case. That's correct, Your Honor. But again, the court seemed to adopt that. It didn't say anything to controvert that. And by its actions, it seems to have embraced that, Your Honor. And then there's the Charlemagne case where the court said we were less certain that there was a knowing involuntary waiver of the right to appeal the restitution. Can you comment on that case? Your Honor, I'm not familiar with that case. I apologize. We could submit a 28-J letter if that would be helpful to the court. It's an unpublished case. If Your Honor doesn't have it. The plea agreement, though, did expressly acknowledge the defendant would be responsible for paying restitution as part of the sentence, right? That's correct. And the defendant confirmed during the plea colloquy that he understood or she understood that she had that obligation. Explicitly. That would be part of the sentence. Correct. Explicitly and with no ceiling. And so then it really becomes a question of whether the right waiver is going to be enforced according to the English language. That's correct, Your Honor. Because you expressly waive on any ground except, right? That's correct, Your Honor. The court has no further questions. We'd ask the court to affirm the sentence and the restitution order. Thank you very much. Mr. Maxwell, you've saved two minutes. As far as the reasonableness of the sentence, I don't want to keep pushing on that, but I would say that in considering all of these factors, I did want to mention that there was a second person involved, which I haven't had the opportunity to speak directly much to, and that's J.B., which primarily came in the vote place with the restitution issue. But J.B. also was with my client for nine months, and during that time period, there was never any violence reported at all as such. So I just want to say that just overemphasizing the violence with D.C., I think does away all of the factors included. I think that perhaps in this situation, the court maybe got tainted by the violence, which is nasty. I'm not saying it's not, and then didn't look at everything else. My client does have a criminal history, but it's a criminal history five. The district court said that it looked at everything. It expressly acknowledged the mitigation arguments that your client made. The district court expressly talked about criminal history. It talked about all of these factors. Isn't that right? Not all of the factors, no. Primarily, the violence, the beating at D.C., the whatever else. She did say she had a terrible background. Disrespect for the law, disrespect for the seriousness of the offense, the criminal history, the mitigation. The district court went through all of these factors. The district court did talk about the criminal history, which is a five. But nobody said why this defendant's criminal history makes her, why she's any worse than anybody else in a category five. This is different. I suggest the guidelines give weight to all of this, and that if the court's going to go outside the guidelines with a variance, that there needs to be some justification other than just a generic version of, hey, there was violence in the case. As to the restitution, briefly, I understand the court's feeling in this regard, but I will point out that there was no actual evidence to establish the actual loss, if any, by J.B. in this particular case, and that taking 15% off gross earnings is speculative at best. Thank you, Mr. Maxwell. We have your case, and we note that you were a court appointed, and appreciate you taking the appointment. Thank you, judges. Lawson Ross versus Great Lakes Higher Education.